1  BENJAMIN B. WAGNER
   United States Attorney
2  HEATHER MARDEL JONES
   Assistant United States Attorney
3  United States Courthouse
   2500 Tulare Street, Suite 4401
4  Fresno, California 93721
   (559) 497-4000 Telephone
5  (559) 497-4099 Facsimile

6  Attorneys for the United States

FILED

APR 25 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
                    DEPUTY CLERK

7

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11 | UNITED STATES OF AMERICA,          )  1:13-CV-00239-AWI-SMS
                                        )
12 |              Plaintiff,            )  **ORDER REGARDING CLERK'S**
                                        )  **ISSUANCE OF WARRANT FOR**
13 |      v.                            )  **ARREST OF ARTICLES *IN***
                                        )  ***REM***
14 | APPROXIMATELY $27,546.00 IN U.S.   )
   | CURRENCY,                          )
15 |                                    )
                                        )
16 |              Defendant.            )

17      WHEREAS, a Verified Complaint for Forfeiture *In Rem* has been filed on February

18 14, 2013, in the United States District Court for the Eastern District of California, alleging

19 that the defendant approximately $27,546.00 in U.S. Currency (hereafter the "defendant

20 currency") is subject to forfeiture to the United States pursuant to 21 U.S.C. §§ 881(a) and

21 881(a)(6) for one or more violations of 21 U.S.C. §§ 841 *et seq.*;

22      And, the Court being satisfied that, based on the Verified Complaint for Forfeiture *In*

23 *Rem* and the affidavit of Department of Homeland Security Special Agent James B. Wells,

24 there is probable cause to believe that the defendant asset so described constitutes property

25 that is subject to forfeiture for such violation(s), and that grounds for the issuance of a

26 Warrant for Arrest of Articles *In Rem* exist, pursuant to Rule G(3)(b)(i) of the Supplemental

27 Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

28      IT IS HEREBY ORDERED that the Clerk for the United States District Court,

1

Order Regarding Clerk's Issuance of Warrant
for Arrest of Articles *In Rem*

1  Eastern District of California, shall issue a Warrant for Arrest of Articles *In Rem* for the

2  defendant currency.

3  Dated: _4/25/13_                          _____

                                            GARY S. AUSTIN
4                                           United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Regarding Clerk's Issuance of Warrant
                                     for Arrest of Articles *In Rem*

## AFFIDAVIT OF JAMES B. WELLS

I, James B. Wells, being first duly sworn under oath, depose and say:

1.   I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) assigned to the Resident Agent in Charge in Bakersfield, California. My duties include determining citizenship and the immigration status of foreign born individuals, and the apprehension and arrest of criminal aliens for removal and prosecution. I have been an HSI Special Agent since March 1, 2003 (prior to July 2011, referred to as ICE). I was previously employed as a Special Agent from October 6, 2002, to March 1, 2003, by the Immigration and Naturalization Service (INS). I began my law enforcement career in February 1995 with INS and have held the following positions: Immigration Detention Enforcement Officer, Immigration Enforcement Agent, Immigration Special Agent and Immigration Supervisory Detention Enforcement Officer. I have attended and graduated from the Basic Immigration Detention Enforcement Officers Course, Basic Immigration Enforcement Agent Course, and Criminal Investigators Training Program at the Federal Law Enforcement Training Center, Glynco, Georgia.

2.   I am currently assigned to the Southern Tri-County High Intensity Drug Trafficking Area Task Force (STC-HIDTA) and have been a task force agent with STC-HIDTA for over ten years. During my service at STC-HIDTA, I have conducted several financial investigations that have resulted in the seizure of illicit proceeds and the subsequent administrative forfeiture of the illicit proceeds.

3.   I utilize all of the foregoing to formulate opinions. The facts set forth in this Affidavit are known to me as a result of my investigation and interview with Agents and Officers who are named in this Affidavit.

4.   This affidavit is made in support of a warrant for arrest of defendant approximately $27,546.00 in U.S. Currency ("the defendant currency"). The defendant currency constitutes money or things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical, all proceeds traceable to such an

1 exchange, and all moneys, negotiable instruments, and securities used or intended to be

2 used to facilitate one or more violations of 21 U.S.C. §§ 841 *et seq.*, and are therefore subject

3 to forfeiture to the United States pursuant to 21 U.S.C. §§ 881(a) and 881(a)(6).

4     5.     The facts set forth in this affidavit are known to me as a result of reviewing

5 official reports, documents, and other evidence obtained as a result of the investigation, and

6 through conversations with other agents and detectives who have participated in this

7 investigation and I have determined the following:

8     6.     Immigration and Customs Enforcement (ICE), Homeland Security

9 Investigations (HSI), in conjunction with the California Department of Fish and Game

10 (DFG), Kern County Sheriff's Office, and other law enforcement, conducted a joint

11 investigation into a marijuana cultivation and trafficking organization operating in Kern

12 County. The investigation identified two marijuana cultivation sites—Lilly Canyon and

13 Faye Canyon Creek. The investigation also identified Francisco Barraza Rivas, as being

14 suspected of illegal drug trafficking activity at several locations, including the address of

15 1404 Pearl Street, Bakersfield, California.

16     7.     In approximately May and June of 2012, a DFG warden together with the U.S.

17 Forest Service began an investigation into a marijuana cultivation site in the area of Faye

18 Canyon, approximately 3.1 miles north of the intersection of Highway 178 and Fay Canyon

19 Road in Weldon, Kern County, California. Surveillance at the location observed a Jeep

20 Cherokee with license plate 6TQH004 (hereafter "the Jeep"), at the cultivation site on

21 numerous occasions. A registration search determined the vehicle to be a 2002 Jeep

22 registered to Francisco Barraza Rivas. Surveillance also observed a Crown Victoria at the

23 marijuana cultivation location on several occasions.

24     8.     During the investigation a traffic stop was conducted on the Jeep for speeding

25 75 miles per hour in a 60 miles per hour zone. The driver and only occupant of the Jeep

26 was Barraza Rivas, who was unlicensed. A second warden observed a large black bag in the

27 rear compartment of the vehicle. Following the stop, aerial surveillance by DFG observed

28 the Jeep travel to 1426 Pearl Street in Bakersfield, California when a sedan similar to a

Crown Victoria also arrived. The aerial surveillance observed two subjects remove two large bags from the rear of the Jeep and place them in the sedan. The sedan then drove to 1404 Pearl Street, Bakersfield, California. Information received from the investigation determined that 1404 Pearl Street is a residence possibly occupied by suspect Ignacio Perez Gomez a.k.a. Ignacio "Nacho" Gomez (hereafter "Gomez"), and both Gomez and the 1404 Pearl Street location are associated with an illegal marijuana cultivation site along Highway 178 in Lilly Canyon near the Kern River Canyon.[1]

9. On August 3, 2012, DFG executed a state search warrant at the address of 1404 Pearl Street with the assistance of special agents from HSI Bakersfield and members of other units. One adult male, one adult female, and five children were encountered at the residence. The male was identified as Crecencio Medrano-Farfan (hereafter "Medrano") who did not speak English. An additional HSI special agent arrived to translate and read Medrano his Miranda rights. Medrano waived his right to remain silent. A game warden questioned Medrano, as witnessed by an ICE agent.

10. Medrano stated that he had been renting the residence for six years and that only the detained subjects lived there. Two months prior, his wife's nephew, Pablo Gomez, had lived in the outbuilding behind the house. Since then, no one else except for the residents of the house had access to the outbuilding. Medrano stated that he did not have any knowledge of marijuana cultivation, marijuana sales, and that marijuana never enters his residence. Medrano later recanted this statement and said that a man identified as Franscisco "Pancho" Barraza, (a.k.a. Francisco Barraza Rivas) had paid him to store

---

[1] On or about April 15, 2012, the United States Forest Service discovered an active supply drop point located at Highway 178 at Lilly Canyon. Surveillance observed individuals loading supplies to the site. On June 27, 2012, an active pursuit of Ignacio Perez Gomez took place after he was observed in a 2000 Ford Expedition at the drop point. Gomez fled on foot. The following day, Gomez' wife reported him as missing and provided a cell phone number for Gomez, indicating that they lived at 900 Pearl Street, Bakersfield, California. On June 29, 2012, 6,535 marijuana plants were eradicated from the Lilly Canyon site. Gomez was further identified as the subject of a 2009 marijuana cultivation investigation and as a Drug Trafficking Organization (DTO) leader involved in growing and selling marijuana grown on public lands in Kern and Tulare counties. In 2009, Gomez maintained a residence at 1404 Pearl Street, Bakersfield, California.

1  marijuana cultivation supplies in the outbuilding.  Medrano stated that Barraza lives five
2  houses down at 1426 Pearl Street, Bakersfield, California and goes by the name "Pancho."
3  Medrano stated that Barraza pays him "$300 twice per month to store fertilizer and other
4  supplies related to the marijuana cultivation totaling approximately $2,000."  Medrano said
5  that two or three weeks prior, Barraza had stored two black bags that had a strong odor of
6  marijuana.  They were stored on the floor of the outbuilding in plain sight.  Medrano said
7  that was the only time Barraza had stored something like that at the residence.  Medrano
8  claimed no knowledge of the sedan or Crown Victoria that was observed delivering bags to
9  his residence.

10     11.    Medrano said that he did not know where the marijuana cultivation occurs.
11  Medrano stated that a knee and back injury prevented him from going to the mountains, or
12  the cultivation site.  Medrano further stated that he did not know anyone else involved in
13  Barraza's operation and initially stated that he did not know Ignacio "Nacho" Perez Gomez.
14  Medrano admitted that Barraza approached Medrano about storing things in the
15  outbuilding, and then admitted knowing Ignacio "Nacho" Perez Gomez and knowing that he
16  was involved in marijuana cultivation.  Medrano stated that Gomez is not directly involved
17  in the cultivation at Fay Canyon.

18     12.    A game warden collected all of the seized items at the residence.  He seized
19  four dried opium poppy pods, a PR24 side handled baton commonly issued to and used by
20  law enforcement, a black bag containing a "Capri Sun" box of ammunition, two gun cases,
21  one of which contained a Stag Arms Stag – 15, 5.56mm (.223 caliber) assault rifle with
22  three 30-round magazines and one 10-round magazine.  One of the 30-round magazines was
23  stamped "RESTRICTED LAW ENFORCEMENT/GOVERNMENT USE ONLY."  In the
24  second gun case was a Marlin lever action 30-30 rifle and a handgun magazine for a Glock
25  Model 19 and handgun magazine for a Colt .380.  Also above the ceiling on the west wall
26  was a white plastic bag, which contained a glass smoking pipe commonly, used to smoke
27  methamphetamine.  In Medrano's bedroom, the warden located various indicia, including a
28  list of names connected to the 1404 Peal address, the defendant currency:  two stacks of

Affidavit of James B. Wells

1  $100 bills with a JPMorgan Chase Bank band around each stack labeled "$10,000," dated
2  June 5, 2012, were located wrapped in a gray sweater; a plastic bag containing $7,500
3  broken down into six stacks, each wrapped in a rubberband; and $46 of loose cash. The
4  warden also located a gold necklace wrapped in an ace bandage depicting Jesus Malverde, a
5  celebrated "folk saint" in Mexico and the United States, worshipped by those involved in
6  drug trafficking. Medrano stated that he paid $5,000 for the necklace and that he
7  purchased the firearms with the intention to resell them for profit. Medrano admitted that
8  he was aware that possessing the firearms was illegal. Medrano also stated that the baton
9  was left at the residence by friends who stole it from a security guard during a fight. A
10  phone seized from Medrano's residence contained photos of marijuana plants, which match
11  the photos located on another phone seized from the marijuana garden in Fay Canyon. The
12  warden also located a digital scale located in the room where Medrano was encountered.

13  13.  A second ICE agent interviewed Medrano in the backyard of the residence.
14  Medrano claimed that he had approximately $28,000 in currency in the residence that was
15  from a workers' compensation claim award he received eight months ago from an injury
16  sustained working for Vidal Bros. in Shafter, California. Medrano further stated that he
17  collected food stamps for his children, and had been unemployed for approximately three
18  years. Medrano stated that he received a total award of $48,700 and claimed the following
19  expenditures: Rent of $650 per month for eight months, groceries of $500 per month for
20  eight months, a $1,700 refrigerator purchase, a $10,000 vehicle purchase (Medrano pointed
21  to a truck parked at the residence when making this statement), a $3,000 vehicle engine
22  purchase, and $3,000 given to his mother.

23  14.  Olivia Gomez, Medrano's wife, stated that Medrano received a worker's
24  compensation award in 2011 for between $40,000 and $50,000 and that the money was used
25  to pay bills, rent, and for the purchase of two vehicles.

26  15.  During execution of the warrant, a Kern County Sheriff's Department deputy
27  and drug detection canine, "Bob," conducted a sniff search of the defendant currency. Three
28  identical bags were placed on the ground approximately 15 feet apart from each other. The

5

Affidavit of James B. Wells

1  canine handler was not told which of the bags contained the defendant currency.  Bob
2  alerted to the center bag, indicating the presence of the odor of narcotics; Bob did not alert
3  to either of the other two bags.  The center bag contained the defendant currency.

4      16.    Medrano was arrested for illegal possession of firearms and ammunition and
5  charged in the Superior Court of California.  The state criminal case of People v. Crecencio
6  Medrano-Farfan, case number BF143372A, is currently pending.

7      17.    According to Employment Development Department records, there is no
8  reported income for either Medrano or his wife Olivia Gomez for the past five years.  Based
9  on the evidence presented in this affidavit, it is my opinion that the currency and vehicle
10 described in this Affidavit are proceeds from criminal offenses or used to facilitate such
11 criminal offenses, as described with more particularity above.

12     18.    Based on the above, I believe there is probable cause to indicate that the
13 defendant currency constitutes money or a thing of value furnished or intended to be
14 furnished in exchange for a controlled substance or listed chemical, all proceeds traceable to
15 such an exchange, and all moneys, negotiable instruments, and securities used or intended
16 to be used to facilitate one or more violations of 21 U.S.C. §§ 841 et seq., are therefore
17 subject to forfeiture to the United States pursuant to 21 U.S.C. §§ 881(a) and 881(a)(6), and
18 that a Warrant for Arrest of Articles In Rem, pursuant to the Supplemental Rules for
19 Admiralty or Maritime Claims and Asset Forfeiture Actions Rule G(3)(b)(i), be issued for
20 the defendant currency.

JAMES B. WELL
Special Agent
Department of Homeland Security

24 Sworn to and Subscribed before me
25 this 25 day of April 2013.

Honorable Gary S. Austin
United States Magistrate Judge

Affidavit of James B. Wells
6

Reviewed and approved as to form

Heather Mardel Jones
Assistant U.S. Attorney

Affidavit of James B. Wells