**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>APPROXIMATELY $27,546.00 IN U.S. CURRENCY,<br><br>　　　　　　　Defendant. | Case No. 1:13-CV-00239-AWI-SMS<br><br>FINDINGS AND RECOMMENDATIONS THAT THE COURT GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND FINAL JUDGMENT OF FORFEITURE<br><br>(Doc. 15) |

　　　In this civil forfeiture action, Plaintiff United States of America ("Government") seeks (1) default judgment against the interests of Crecencio Medrano-Farfan and Olivia Gomez in approximately $27,546.00 in U.S. currency, and (2) entry of a final forfeiture judgment to vest in the Government all right, title and interest in the defendant currency. The Government's motion has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 72-302(c)(19) and is considered in accordance with Local Rule A-540(d).

　　　This Court has reviewed the papers and has determined that this matter is suitable for decision without oral argument pursuant to Local Rule 78-230(h). Having considered all written materials submitted, the undersigned recommends that the District Court grant the Government default judgment; enter final forfeiture judgment to vest in the Government all right, title and interest in the defendant currency; and order the Government, within ten (10) days of service of an order adopting these findings and recommendations, to submit a proposed default and final forfeiture judgment consistent with these findings and recommendations.

**FACTUAL BACKGROUND[1]**

The case arises from an investigation into a Kern County marijuana cultivation and trafficking organization. The agencies involved included Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), the California Department of Fish and Game (DFG), Kern County Sheriff's Office, and other law enforcement.

In approximately May and June of 2012, a DFG warden together with the U.S. Forest Service began an investigation into a marijuana cultivation site in the area of Faye Canyon, approximately 3.1 miles north of the intersection of Highway 178 and Fay Canyon Road in Weldon, Kern County, California. Surveillance at the location observed a Jeep Cherokee with license plate 6TQH004 (hereafter "the Jeep"), at the cultivation site on numerous occasions. A registration search determined the vehicle to be a 2002 Jeep registered to Francisco Barraza Rivas. Surveillance also observed a Crown Victoria at the marijuana cultivation location on several occasions.

During the investigation a traffic stop was conducted on the Jeep for speeding 75 miles per hour in a 60 miles per hour zone. The driver and only occupant of the Jeep was Barraza Rivas, who was unlicensed. A second warden observed a large black bag in the rear compartment of the vehicle. Following the stop, aerial surveillance by DFG observed the Jeep travel to 1426 Pearl Street in Bakersfield, California when a sedan similar to a Crown Victoria also arrived. The aerial surveillance observed two subjects remove two large bags from the rear of the Jeep and place them in the sedan. The sedan then drove to 1404 Pearl Street, Bakersfield, California.

The investigation also determined by other means that 1404 Pearl Street was possibly associated with illegal marijuana cultivation, through its connection to Drug Trafficking Organization (DTO) suspect Ignacio Perez Gomez a.k.a. Ignacio "Nacho" Gomez (hereafter "Gomez"). Gomez was previously the subject of a 2009 marijuana cultivation investigation and as a DTO leader involved in growing and selling marijuana grown on public lands in Kern and Tulare counties, and he was known to have maintained a residence at that address in 2009. More recently, Gomez had been associated with an active supply drop point for a suspected marijuana grow which

---

[1] These facts were derived from the Government's application and from the Court's records.

had been discovered in April 2012 at Highway 178 at Lilly Canyon. Surveillance observed individuals loading supplies to the site. On June 27, 2012, an active pursuit of Gomez took place after he was observed in a 2000 Ford Expedition at the drop point. Gomez fled on foot. The following day, Gomez' wife reported him as missing and provided a cell phone number for Gomez, indicating that they lived at 900 Pearl Street, Bakersfield, California. On June 29, 2012, 6,535 marijuana plants were eradicated from the Lilly Canyon site.

On August 3, 2012, DFG executed a state search warrant at the address of 1404 Pearl Street with the assistance of special agents from HSI Bakersfield and members of other units. One adult male, one adult female, and five children were encountered at the residence. The male was identified as Crecencio Medrano-Farfan (hereafter "Medrano") who did not speak English. An additional HSI special agent arrived to translate and read Medrano his Miranda rights. Medrano waived his right to remain silent and was questioned by a game warden, as witnessed by an ICE agent.

Medrano stated that he had been renting the residence for six years and that only the detained subjects lived there. Two months prior, his wife's nephew, Pablo Gomez, had lived in the outbuilding behind the house. Since then, no one else except for the residents of the house had access to the outbuilding. Medrano stated that he did not have any knowledge of marijuana cultivation or marijuana sales, and that marijuana never entered his residence. Medrano later recanted this statement and said that a man identified as Franscisco "Pancho" Barraza, (a.k.a. Francisco Barraza Rivas) had paid him to store marijuana cultivation supplies in the outbuilding. Medrano stated that Barraza lives five houses down at 1426 Pearl Street, Bakersfield, California and went by the name "Pancho." Medrano stated that Barraza paid him "$300 twice per month to store fertilizer and other supplies related to the marijuana cultivation totaling approximately $2,000." Medrano said that two or three weeks prior, Barraza had stored two black bags that had a strong odor of marijuana. They were stored on the floor of the outbuilding in plain sight. Medrano said that was the only time Barraza had stored something like that at the residence. Medrano claimed no knowledge of the sedan or Crown Victoria that was observed delivering bags to his residence.

Medrano said that he did not know where the marijuana cultivation occurred. He stated that a knee and back injury prevented him from going to the mountains, or the cultivation site. He further stated that he did not know anyone else involved in Barraza's operation and initially stated that he did not know Gomez. Medrano admitted that Barraza approached Medrano about storing things in the outbuilding, and then admitted knowing Gomez and knowing that he was involved in marijuana cultivation. Medrano stated that Gomez was not directly involved in the cultivation at Fay Canyon.

A game warden collected all of the seized items at the residence. He seized four dried opium poppy pods, a PR24 side handled baton commonly issued to and used by law enforcement, a black bag containing a "Capri Sun" box of ammunition, two gun cases, one of which contained a Stag Arms Stag – 15, 5.56mm (.223 caliber) assault rifle with three 30-round magazines and one 10-round magazine. One of the 30-round magazines was stamped "RESTRICTED LAW ENFORCEMENT/GOVERNMENT USE ONLY." In the second gun case was a Marlin lever action 30-30 rifle and a handgun magazine for a Glock Model 19 and handgun magazine for a Colt .380. *Id*. Also above the ceiling on the west wall was a white plastic bag, which contained a glass smoking pipe commonly, used to smoke methamphetamine. In Medrano's bedroom, the warden located various indicia, including a list of names connected to the 1404 Peal address, and the defendant currency: two stacks of $100 bills with a JPMorgan Chase Bank band around each stack labeled "$10,000," dated June 5, 2012, wrapped in a gray sweater; a plastic bag containing $7,500 broken down into six stacks, each wrapped in a rubberband; and $46 of loose cash. The warden also located a gold necklace wrapped in an ace bandage depicting Jesus Malverde, a celebrated "folk saint" in Mexico and the United States, worshipped by those involved in drug trafficking. Medrano stated that he paid $5,000 for the necklace and that he purchased the firearms with the intention to resell them for profit. Medrano admitted that he was aware that possessing the firearms was illegal. Medrano also stated that the baton was left at the residence by friends who stole it from a security guard during a fight. A phone seized from Medrano's residence contained photos of marijuana plants, which match the photos located on another phone seized from the marijuana garden in Fay

1 Canyon. The warden also located a digital scale located in the room where Medrano was
2 encountered.
3    A second ICE agent interviewed Medrano in the backyard of the residence. Medrano
4 claimed that he had approximately $28,000 in currency in the residence that was from a workers'
5 compensation claim award he received eight months ago from an injury sustained working for
6 Vidal Bros. in Shafter, California. Medrano further stated that he collected food stamps for his
7 children, and had been unemployed for approximately three years. Medrano stated that he received
8 a total award of $48,700 and claimed the following expenditures: Rent of $650 per month for eight
9 months, groceries of $500 per month for eight months, a $1,700 refrigerator purchase, a $10,000
10 vehicle purchase (Medrano pointed to a truck parked at the residence when making this statement),
11 a $3,000 vehicle engine purchase, and $3,000 given to his mother.
12    Olivia Gomez, Medrano's wife, stated that Medrano received a worker's compensation
13 award in 2011 for between $40,000 and $50,000 and that the money was used to pay bills, rent, and
14 for the purchase of two vehicles.
15    During execution of the warrant, a Kern County Sheriff's Department deputy and drug
16 detection canine, "Bob," conducted a sniff search of the defendant currency. Three identical bags
17 were placed on the ground approximately 15 feet apart from each other. The canine handler was not
18 told which of the bags contained the defendant currency. Bob alerted to the center bag, indicating
19 the presence of the odor of narcotics; Bob did not alert to either of the other two bags. The center
20 bag contained the defendant currency.
21    Medrano was arrested and charged in the Superior Court of California in *People v.*
22 *Crecencio Medrano-Farfan*, case number BF143372A, for illegal possession of firearms and
23 ammunition.
24    According to Employment Development Department records, there is no reported income
25 for either Medrano or his wife Olivia Gomez for the past five years.

26 **PROCEDURAL BACKGROUND**

27    On February 14, 2013, the Government filed its complaint for forfeiture *in rem*, alleging
28 that $27,546.00 of defendant currency was subject to forfeiture to the Government under 21 U.S.C.

§ 881(a)(6) because it was derived from proceeds traceable to one or more violations of 18 U.S.C. § 841, *et seq*. On April 25, 2013, based on the complaint's allegations, the Clerk of the Court issued a Warrant for Arrest of Articles In Rem for the Defendant Currency. The warrant was executed on April 29, 2013.

Public notice of the action and the arrest of the defendant currency were published via the official internet government forfeiture site www.forfeiture.gov for at least 30 consecutive days. Publication in a manner consistent with Local Rule 500(d) via Supplemental Rule G(4)(a) was made beginning March 12, 2013, and proof of such publication was filed with the Court on April 26, 2013.

In addition to providing notice by publication, the United States also caused notice to be delivered to various individuals with a suspected potential interest in the defendant currency in a manner reasonably likely to reach them, as follows. On April 29, 2013, Crecencio Medrano-Farfan was personally served with copies of the Verified Complaint for Forfeiture *In Rem*, Order re Clerk's Issuance of Warrant for Arrest, Warrant for Arrest of Articles *In Rem*, Order Setting Mandatory Scheduling Conference, Notice of Availability of Voluntary Dispute Resolution, Notice of Availability of a Magistrate Judge, and notice of forfeiture letter dated April 26, 2013, at his last known address of incarceration at the Lerdo Jail in Kern County located at 17645 Industrial Farm Road, Bakersfield, California.On April 26, 2013, Olivia Gomez was served with copies of the above-listed documents by first class mail and certified mail, tracking no. 7006-2760-0000-0500-9413. The certified return receipt card was signed on May 6, 2013 by Pablo Gomez.

As part of the Government's Requests for Entry of Default, the United States Attorney declared under penalty of perjury that on information and belief, neither Crecencio Medrano-Farfan nor Olivia Gomez was in the military service or was an infant or incapacitated person. There have been no claims filed by or on behalf of Crecencio Medrano-Farfan or Olivia Gomez to the defendant currency and the time for any person or entity to file a claim and answer has expired. *See* Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Accordingly, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, on July 5,

2013, Clerk's Certificates of Entry of Default were entered against Crecencio Medrano-Farfan and Olivia Gomez.

The United States now seeks entry of a default judgment against Crecencio Medrano-Farfan or Olivia Gomez, and the entry of a Final Judgment of Forfeiture vesting all right, title, and interest in the defendant currency to the United States.

## DISCUSSION

### I. Sufficiency of the Complaint

The Government contends that the allegations set forth in the verified complaint for Forfeiture In Rem and the cited facts provide ample grounds for forfeiture of the defendant currency. A complaint's sufficiency is one factor for consideration in deciding whether to grant default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Money or other things of value are subject to forfeiture if they are derived from proceeds traceable to one or more violations of 18 U.S.C. § 841, *et seq*. 21 U.S.C. § 881(a)(6).

The Government's verified complaint alleges that the defendant currency is subject to forfeiture since it was derived from proceeds traceable to one or more violations of 18 U.S.C. § 841, *et seq.* 21 U.S.C. § 881(a)(6). As set forth above and in the verified complaint, the defendant currency was seized on August 3, 2013, in Bakersfield, California. The complaint meets the requirements of Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, in that it is verified; states the grounds for subject matter jurisdiction, in rem jurisdiction, and venue; describes the property seized and the circumstance of its seizure; and identifies the relevant statutes. In the absence of assertion of interests in the defendant currency, this Court is not in a position to question the facts supporting its forfeiture. As alleged, the facts set forth a sufficient connection between the defendant currency and illegal drug activity to support a forfeiture.

### II. Notice Requirements

The Fifth Amendment's Due Process Clause prohibits the Government from taking property without due process of law. Individuals whose property interests are at stake are entitled to notice

and an opportunity to be heard. The requisite notice was provided to Crecencio Medrano-Farfan and Olivia Gomez.

### A. Notice by Publication

Supplemental Rule G(4) provides that in lieu of newspaper publication, the Government may publish notice "by posting notice on an official government forfeiture site for at least 30 consecutive days." Local Admiralty and In Rem rules further provide that the Court shall designate by order the appropriate vehicle for publication. Local Rules A-530 and 83-171. On April 25, 2013, this Court authorized publication of the forfeiture action via the internet forfeiture website www.forfeiture.gov for at least thirty days. According to the Government's Declaration of Publication (Doc. 6), a Notice of Civil Forfeiture was published on the internet site for thirty days beginning on March 12, 2013. Accordingly, the Government satisfied the requirements for notice to Crecencio Medrano-Farfan and Olivia Gomez by publication.

### B. Personal Notice

When the Government knows the identity of the property owner, due process requires "the Government to make a greater effort to give him notice than otherwise would be mandated by publication." *United States v. Real Property*, 135 F.3d 1312, 1315 (9th Cir. 1998). In such cases, the Government must attempt to provide actual notice by means reasonably calculated under all circumstances to apprise the owner of the pendency of the forfeiture action. *Dusenbery v. United States*, 534 U.S. 161, 168 (2002) (*quotations omitted*). See also Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950) (requiring such notice "as one desirous of actually informing the absentee might reasonably adopt to accomplish it"). "Reasonable notice, however, requires only that the government attempt to provide actual notice; it does not require that the government demonstrate that it was successful in providing actual notice." *Mesa Valderrama v. United States*, 417 F.3d 1189, 1197 (11thCir. 2005).

Supplemental Rule G(4)(b) mirrors this requirement, providing for notice to be sent by means reasonably calculated to reach the potential claimant. Local Rule A-540 also requires that a party seeking default judgment in an action in rem demonstrate to the Court's satisfaction that due notice of the arrest of the property has been given both by publication and by personal service of

the person having custody of the property, or if the property is in the hands of a law enforcement officer, by personal service on the person who had custody of the property before its possession by a law enforcement agency or officer. Notice must also be provided by personal service or certified mail, return receipt requested, on every other person who has appeared in the action and is known to have an interest in the property, provided that failure to give actual notice to such other person may be excused upon a satisfactory showing of diligent efforts to provide notice without success. L.R. A-540(a). Notwithstanding the Supplemental Rules and L.R. A- 540(a), the Government provides sufficient notice when the notice complies with the requirements of F.R.Civ.P. 4. *See* F.R.Civ.P. 4(n)(1) (providing that when a federal statute authorizes forfeiture, "[n]otice to claimants of the property shall then be sent in the manner provided by statute or by service of a summons under this rule").

Here, Crecencio Medrano-Farfan was personally served by mail at his last known address of incarceration on April 29, 2013. On April 26, 2013, Olivia Gomez was served by first class mail and certified mail. The certified return receipt card was signed on May 6, 2013 by Pablo Gomez. Accordingly, both individuals received actual notice.

### C.     Failure to File Claim or Answer

Supplemental Rule G(5) requires any person who asserts an interest in or right against the defendant currency to file a claim with the Court within 35 days after service of the Government's complaint or 30 days after the final publication of notice. Supplemental R. G(4)(b) & (5). Failure to comply with the procedural requirements for opposing the forfeiture precludes a person from establishing standing as a party to the forfeiture action. *Real Property*, 135 F.3d at 1317. The Clerk of Court properly entered default against Crecencio Medrano-Farfan and Olivia Gomez on July 5, 2013.

### D.     Default Judgment

The Government seeks judgment against the interests of Crecencio Medrano-Farfan and Olivia Gomez and final forfeiture judgment to vest in the Government all right, title and interest in the defendant currency. The Supplemental Rules do not set forth a procedure to seek default judgment in rem. Supplemental Rule A provides, "The Federal Rules of Civil Procedure also apply

to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules."

Pursuant to the Federal Rules of Civil Procedure, default entry is a prerequisite to default judgment. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and the failure is shown by affidavit or otherwise, the clerk must enter the party's default." F.R.Civ.P. 55(a). Generally, the default entered by the clerk establishes a defendant's liability.

> Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment. The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.
>
> *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (*internal citations and quotation marks omitted*).

As noted above, the Government properly obtained default entries against the interests of Crecencio Medrano-Farfan and Olivia Gomez. There is no impediment to default judgment sought by the Government against them. The Government properly seeks judgment against the interests of the entire world, that is, a final forfeiture judgment to vest in the Government all right, title, and interest in the defendant currency. "A judgment in rem affect the interests of all persons in designated property . . . . [T]he plaintiff is seeking to secure a pre-existing claim in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons." *Hanson v. Denckla*, 357 U.S. 235, 246 n. 12 (1958). Because of the defaults of Crecencio Medrano-Farfan and Olivia Gomez the Government is entitled to a final forfeiture judgment.

**RECOMMENDATIONS**

In light of the reasons discussed above, this Court recommends that

1. The District Court grant Plaintiff United States of America default judgment against the interests of Crecencio Medrano-Farfan and Olivia Gomez;

2. The Clerk of Court enter final forfeiture judgment to vest in Plaintiff United States of America all right, title and interest in the defendant currency; and

3. The District Court order Plaintiff United States of America, within ten (10) days of service of an order adopting these findings and recommendations, to submit a proposed

    default and final forfeiture judgment consistent with the findings and recommendations and the order adopting them.

These findings and recommendations are submitted to District Judge Anthony W. Ishii pursuant to 28 U.S.C. § 636 (b)(1)(B) and Local Rule 72-304. Within fifteen (15) court days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review these findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specific time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **August 21, 2013**                    **/s/ Sandra M. Snyder**
                                                          UNITED STATES MAGISTRATE JUDGE